**TORANZO–CLAURE, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 96–153C.

United States Court of Federal Claims.

Feb. 6, 2001.

Paul P. Vangellow, Falls Church, Virginia, for plaintiff.

Brian S. Smith, with whom were on the briefs Frank W. Hunger, Assistant Attorney General, David Cohen, Director, Joseph Kijewski, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

### OPINION

SMITH, Senior Judge.

This matter comes before the court on defendant's Motion for Summary Judgment. Plaintiff seeks compensation and reimbursement of expenses arising under several alleged written and oral express contracts, and several alleged implied-in-fact contracts with the Drug Enforcement Administration (DEA) and the Bureau of Alcohol, Tobacco and Firearms (BATF) for services provided as a confidential informant between 1983 and 1994. Because, based on the uncontroverted facts before the court, the agents named by plaintiff lacked the authority to bind the government to the oral express or implied-in-fact contracts alleged, and because the alleged written contracts involved do not present any outstanding obligation to pay money to plaintiff, defendant's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiff worked undercover for the DEA and BATF in Bolivia from 1983 to 1991. He was actively involved in efforts to interdict illegal guns and drugs both by the United States and Bolivia during that time. Plaintiff claims he continued to work undercover for the DEA and BATF in the United States from 1991 until 1994. The DEA paid plaintiff a total of $69,640 for information and assistance he provided to the DEA in Bolivia while he was there. When the plaintiff's activities endangered his life, defendant helped relocate him to the United States. Plaintiff was deactivated in June 1992. Plaintiff was then reactivated by the DEA and received a total of $2,250 for information and assistance he provided to DEA operations while in Washington, D.C. During 1994, plaintiff signed two cooperating individual (CI) agreements, one with the DEA and another with the BATF. Plaintiff claims that the government failed to honor contractual obligations to pay $75,000 for information he provided and expenses he incurred between 1988 and 1994.

## DISCUSSION

The two CI agreements signed by plaintiff, the only written agreements in evidence, do not in themselves obligate either agency to make any payments to plaintiff. The DEA agreement makes no reference whatsoever to payment. The BATF agreement states that the agency will "reimburse me for expenses incurred which are deemed by ATF to be reasonable and in furtherance of this investigation." It concludes, "I understand that any monetary, or other type of rewards given to me by ATF, either for services rendered or information provided, must be declared as other income on any income tax return I may be required to file." Thus the BATF agreement makes reimbursement of expenses discretionary and, while it refers to "monetary, or other type of rewards," makes no commitment to provide such rewards.

Plaintiff provides evidence of payments, totaling $69,640, for information he provided and expenses he incurred as a cooperating individual prior to his deactivation in June 1992. While that evidence might demon-strate that some earlier contractual obligation of the government had been paid, it does little to establish any subsequent contractual obligation. During oral arguments plaintiff's counsel suggested that the $69,640 payment is evidence of the parties' course of dealing. Indeed, understandably, plaintiff might have hoped to be reimbursed for expenses and paid for information when he was again activated as a cooperating individual in 1994. Nevertheless, as explained above, these CI agreements make no promise of payment. Furthermore, plaintiff's counsel stated that, "It looked like the DEA was in sole control of when and how he was going to get paid ... There was no agreement with regard to what amount of activity or what kind of information will result in what quantum of compensation." Tr. 36.

Furthermore, the DEA documents, titled "Report of Investigation," which plaintiff submits as evidence of the $69,640 payment, both include the recommendation that plaintiff be considered deactivated as of June 1992. Thus, these documents, prepared on May 15, 1992, not only show that plaintiff was paid for his earlier work but also serve to narrow the time during which plaintiff could even hope to be paid pursuant to a CI agreement. He had already been paid through May 15, 1992 when he was deactivated. He was next activated in March 1994.

According to the declaration of BATF Special Agent Monique Wilson, plaintiff provided information on illegal firearms sales on March 21, 1994, was paid $150 in "subsistence payments" to cover his expenses that were "deemed by ATF to be reasonable and in furtherance of the investigation in which he acted as an informant," and was not utilized as an informant thereafter. According to the declaration of DEA Special Agent Robert Valentine, plaintiff was paid $2,250 for "information and assistance to DEA in furtherance of DEA operations in the Washington, D.C. area" between March 1994 and September 1994. Agent Valentine stated that plaintiff was deactivated in September 1994.

In his Statement of Genuine Issues, plaintiff challenges all three of the government's declarations, those of Wilson, Valentine, and

DEA Deputy Assistant Administrator Whetsone, as not based on personal knowledge. Plaintiff himself, however, states in his amended complaint that he seeks compensation and reimbursement only through 1994. Accordingly, plaintiff cannot credibly seek compensation pursuant to a CI agreement except in connection with services rendered, at the most, between March 1994 and December 1994 when plaintiff was indicted, but not convicted, for alleged illegal purchases of firearms.

The court notes that plaintiff received $69,640 for his services as an informant during four years between September 1988 and September 1992 but seeks $75,000 for his services during something less than nine months between March 1994 and December 1994. In light of the uncertainty that characterizes plaintiff's pleadings, the court believes that, even if plaintiff were entitled to compensation under some contract, $75,000 is an improbable amount. In addition, the court notes that, perhaps coincidentally, the DEA Agent's Manual provides that the Special Agent in Charge *may* approve award payments up to $25,000 per quarter. This provision could not serve as the basis for the promise of payment plaintiff claims he was given, however, because the manual also states that "[field] [o]ffices must not promise any awards in any amount to an individual. The statutory authority provides that the payment of such awards is purely discretionary." The ATF manual includes a comparable prohibition.

Plaintiff states in his amended complaint that his agreements with defendant "were expressed both in writing and orally, and implied-in-fact at various times and in differing contexts." Having found that no express written agreement entitles plaintiff to compensation, the court now turns to the possibility that plaintiff may be due compensation under an express oral or implied-in-fact contract. The court finds most difficult the fact that plaintiff fails to specifically describe the purported contracts upon which his claim is based. Even his expenses, an amount with which he, more than the government, should be familiar, are not totaled or described at all, much less itemized.

Plaintiff's vague references fall far short of meeting his burden of proving the elements of an implied-in-fact contract, which are the same as those of an express contract: mutuality of intent, consideration, and lack of ambiguity in offer and acceptance. *See City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990); *Fincke v. United States,* 230 Ct.Cl. 233, 244, 675 F.2d 289 (1982); *Russell Corp. v. United States,* 210 Ct.Cl. 596, 609, 537 F.2d 474 (1976); *see also Baltimore & Ohio R.R. Co. v. United States,* 261 U.S. 592, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923).

When the United States is a party, a fourth requirement is added: the Government representative "whose conduct is relied upon must have actual authority to bind the government in contract." *Juda v. United States,* 6 Cl.Ct. 441, 452 (1984) (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). Apparent authority is not enough, though in some limited situations actual authority may be implied.

Defendant's three declarants have all stated under oath that none of the agents with whom plaintiff had dealings had authority to bind the government in contract. Mr. Whetstone states that according to his review of the DEA Agents Manual, the Manual "is devoid of any relevant provision delegating or otherwise granting actual contractual authority to DEA agents... on behalf of the United States to commit Government funds for payments to informants or cooperative witnesses." Whetstone Dec. ¶ 8.

In similar cases, the DEA has repeatedly taken the position that its field agents lack authority to bind the government in contract. *See, e.g., Henke v. United States,* 60 F.3d 795 (Fed.Cir.1995). Plaintiff has offered no support for the contention that such agents did have the authority. Plaintiff has offered no evidence of contract ratification by higher level personnel who may have had authority to bind the government. Plaintiff cannot even argue that higher level personnel knew that the agencies received the benefits of plaintiff's services, and thereby ratified a contract by which those services were provid-

ed because, as discussed below, plaintiff complained that the agents either were not interested or were not acting on the information he provided.

■ Finally, "[i]t is well established that an implied-in-fact contract requires a meeting of the minds which is inferred from the conduct of the parties and, in the light of surrounding circumstances, shows their tacit understanding and agreement." *Fincke v. United States*, 230 Ct.Cl. 233, 243, 675 F.2d 289 (1982) (citing *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 508 F.2d 817 (1974); *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 1241 (1970)). Here, the court has little upon which to base a conclusion that the parties reached a meeting of the minds with respect to some alleged contracts, formed but unfulfilled. On the other hand, some very compelling evidence indicates that no such tacit understanding and agreement was reached. Plaintiff's counsel, during arguments, while addressing the court's concern over lack of specificity, explained that his client "expected compensation and reimbursement for expenses, commensurate with the activities and the information he provided." Tr. 28. Counsel conceded that the value of plaintiff's information was "subject to the evaluation of the agent" and that "he didn't have any control over what he was paid specifically." Tr. 27. Counsel explained that plaintiff brought the agents leads but that the agents "had discretion to determine the value of such information." Tr. 33. In fact plaintiff was disturbed that "he was bringing them leads all the time and they weren't acting on them." Tr. 33. Although plaintiff's counsel

characterized these leads as involving big-time drug dealers and gun runners, he admitted that the agents either were not interested or were not acting on the information. Nevertheless, plaintiff continued to "give them more." Tr. 33. "Of course," counsel admitted, "it's up to them to decide what to pursue." Tr. 33.

## CONCLUSION

In responding to a motion for summary judgment, plaintiff "must set out ... what specific evidence could be offered at trial." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984), *cited in Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987). Plaintiff's burden to provide specific evidence that there is a genuine issue for trial "is not met by reliance on its pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl.Ct. 100, 105 (1988). Because plaintiff has not shown that a genuine issue of material fact remains as to the existence of the alleged contracts which form the basis for his claim, the court must GRANT defendant's Motion for Summary Judgment. The clerk of the court will enter judgment for defendant.

**IT IS SO ORDERED.**