John DOE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–31 C.

United States Court of Federal Claims.

Nov. 14, 2003.

David Oscar Markus, Miami, FL, counsel of record for plaintiff, with whom was Joaquin Perez, Miami, FL.

Kenneth Samuel Kessler, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for defendant, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director, and Vickie L. Rashid, United States Drug Enforcement Administration.

## OPINION

DAMICH, Chief Judge.

### I. Introduction

Before the Court are Defendant's Motion to Dismiss and, in the Alternative, for Summary Judgment (hereinafter "Def.'s Mot."), and Plaintiff's response and cross-motion for partial summary judgment (hereinafter "Pl.'s Resp."). The United States (Defendant) seeks dismissal of the portion of count I based on the Assets Forfeiture Fund statute (hereinafter "AFF") and seeks summary judgment on the breach of contract and unjust enrichment claims that John Doe (Plaintiff) has asserted against it. Plaintiff claims that Defendant has breached a contract that Defendant, through its agency, the Drug Enforcement Administration (hereinafter

"DEA"), had allegedly entered into with Plaintiff for the purpose of obtaining information on certain drug activities. Because Plaintiff has not been able to create a genuine issue as to a material fact regarding the elements of an implied-in-fact contract, summary judgment for Defendant is appropriate on the breach of contract aspect of count I and on count II. Further, dismissal of the AFF portion of count I is appropriate because this Court lacks jurisdiction to hear claims based on that statute.

For the reasons set forth herein, Defendant's Motion to Dismiss, and in the Alternative, for Summary Judgment is hereby GRANTED.

### II. Background

On July 17, 1995, Plaintiff signed a Cooperating Individual Agreement (hereinafter "Agreement") with Defendant.[1] Am. Compl. Ex. 1 (hereinafter "Compl."). In this Agreement, Plaintiff acknowledged that he would not violate criminal laws and that he may be asked to testify in court. Pl.'s Resp. to the Order of Aug. 23, 2002 Ex. 1. The Agreement did not set forth any obligations for Defendant. *Id.* Plaintiff alleges that, at the same time, Defendant, through its agents. Carlos Teixeira and Jessica Mason, also made an oral contract with him. Compl. ¶ 7; Pl. John Doe's Supp. Br. Ex. 1 (hereinafter "Pl.'s Supp. Br."); 2003 Aff. of Pl. John Doe ¶ 4 (hereinafter "Pl.'s Aff."). Plaintiff claims that this alleged contract required the DEA to pay Plaintiff 25% of the value of any seizures effectuated through information received from Plaintiff. Pl.'s Aff. ¶ 4. Defendant denies that such a contract exists. Def.'s Mot. at 8.

Plaintiff was arrested on drug charges on October 26, 1999, and, on November 19, 1999, he was indicted for alleged violations of 21 U.S.C. § 952(a) and 18 U.S.C. § 2. Compl. ¶¶ 13–14. Plaintiff based his defense on public authority because he "believed that he was acting as an agent of [DEA] and had no intentions to commit a crime." *Id.* Ex. 3, ¶ 5. Plaintiff was thereafter acquitted of all

---

1. There is also evidence that Plaintiff signed another such agreement on May 7, 1998. *See*

Def.'s Proposed Findings of Uncontroverted Fact (hereinafter "DPFUF") at A1.

charges in the United States District Court for the Southern District of Florida. *Id.* ¶ 15. Despite this acquittal, the DEA claims that Plaintiff was not working as a DEA informer during the activities for which Plaintiff was indicted and, on that basis, it revoked any award for which he might have been eligible as a result of his work as an informer. DPFUF ¶¶ 14–15.

On April 18, 2001, Plaintiff filed suit against the United States Department of Justice in the United States District Court for the Southern District of Florida. The case was transferred to this Court on January 9, 2002, because the district court lacked subject matter jurisdiction, as the claim was for a breach of contract claim over $10,000 against the federal government and such jurisdiction lies exclusively in this Court under the Tucker Act, 28 U.S.C. § 1491, *et seq.* Plaintiff alleges that the indictment was part of a malicious plan to avoid paying him the awards previously owed him. Compl. ¶ 17. He seeks reinstatement of the awards, compensation for time spent in federal prison while awaiting trial, and the costs of defending his criminal case. *Id.* ¶¶ 26–27.

Defendant filed the present motion on November 26, 2002. The motion originally sought dismissal of counts I and II of Plaintiff's complaint, or, in the alternative, summary judgment on count I. The Court later denied Defendant's motion to dismiss count I for lack of jurisdiction over the breach of contract claim, and Defendant withdrew its motion to dismiss count II. On January 13, 2003, Plaintiff cross-moved for partial summary judgment for $199,800, the amount that the DEA had allegedly told Plaintiff it would pay for information that led to a seizure of $1.8 million. Pl.'s Resp. at 17.[2]

## III. Analysis

### A. Motion to Dismiss Count I—The AFF Statute

■ Plaintiff alleges that this Court has jurisdiction to hear claim I under (1) 28 U.S.C. § 524(c), known as the Assets Forfei-

ture Fund statute; and (2) the Tucker Act, 28 U.S.C. § 1491(a)(1). Defendant has moved to dismiss the portion of count I that is based on the AFF, and this motion must be granted because this Court has no jurisdiction over claims brought pursuant to the AFF.

The AFF statute created a fund that can be used for law enforcement purposes. 28 U.S.C. § 524(c)(1). For the Court of Federal Claims to have jurisdiction under the AFF statute, it must be money-mandating. 28 U.S.C. § 1491(a)(1); *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Therefore, if the payment of money under the AFF is discretionary, the Court of Federal Claims will have no jurisdiction over it.

The terms of the AFF explicitly place complete discretion with the Government as to when an award will be made. Although the statute provides that the Asset Forfeiture Fund shall be available for "the payment of awards for information or assistance directly relating to violations of the criminal drugs laws," 28 U.S.C. § 524(c)(1)(B), the statute also requires that "[a]ny award paid from the Fund ... shall be paid *at the discretion of the Attorney General or his delegate, under existing departmental delegation policies for the payment of awards.*" 28 U.S.C. § 524(c)(2) (emphasis added).

Plaintiff, however, argues that the AFF statute *is* money-mandating. His argument is based on an analogy between the AFF and the Tariff Act of 1930, 19 U.S.C. § 1619, which requires the payment of awards to claimants who have met specific statutory conditions of providing "original information involving a violation of the customs or navigation laws that has led to the recovery of a fine, penalty, or property." *Doe v. United States,* 100 F.3d 1576, 1582 (Fed.Cir.1996). Because binding case law has interpreted 19 U.S.C. § 1619 to be money-mandating, *id.,* Plaintiff's argument is that the AFF statute should be interpreted in the same manner.

---

2. Plaintiff also initially requested that he be permitted to take discovery before a summary judgment ruling was made. Pl.'s Resp. at 5. Plaintiff later amended this request at the June 12, 2003

hearing, in which he instead requested supplementation of the record, which the Court permitted. June 12, 2003 Tr. at 60.

While the Federal Circuit has yet to rule on the specific nature of the AFF statute, other cases before the Court of Federal Claims convincingly detail key distinctions between the AFF statute and 19 U.S.C. § 1619, Specifically, in *Hoch v. United States*, 33 Fed.Cl. 39, 44 (1995), the court stated that, unlike 19 U.S.C. § 1619, the AFF statute "does not enumerate specific statutory requirements [for the informer] and therefore does not have the first characteristic of discretionary language statutes that are money-mandating." Indeed, an informer under the AFF statute can be anyone who provides any type of information. *Id.* Subsequent case law has followed the *Hoch* analysis. *See Khairallah v. United States*, 43 Fed.Cl. 57, 61 (1999); *Perri v. United States*, 35 Fed.Cl. 627, 629–30 (1996).

Plaintiff disagrees that *Hoch* and its progeny are relevant here, arguing that they were overruled by the Federal Circuit in *Doe*, 100 F.3d 1576. Although *Doe* did eliminate one distinction between the two statutes discussed in *Hoch*, the other distinction is still viable. *Doe* stated that a statute need not state a sum certain to be money-mandating.[3] *Id.* at 1582 (finding that, although § 1619 had been amended to give the Secretary of the Treasury discretion as to the *amount of award*, that did not prevent the statute from being money-mandating). However, the *Doe* decision did not affect the other distinction, that a statute cannot be money-mandating unless there are statutory requirements for the informer, which the AFF, unlike § 1619, does not contain. *Id.; see also Hoch*, 33 Fed.Cl. at 43–44. Further, the *Doe* court actually compared the AFF with § 1619:

Congress provided no indication in either the statutory language or legislative history [of § 1619] that it intended to ... render awards wholly discretionary. *Cf.* 28 U.S.C. 524(c)(1)(C) (establishing Justice Department's Assets Forfeiture Fund for, *inter alia*, "at the discretion of the Attorney General, the payment of awards for

information or assistance leading to a civil or criminal forfeiture involving any Federal agency participating in the Fund") (emphasis added).

*Doe*, 100 F.3d at 1581. Therefore, since nothing in the *Doe* decision would suggest that the AFF is money-mandating, and since the language of the statute indicates that the AFF is discretionary, this Court has no jurisdiction over the AFF portion of claim I.

Plaintiff also claims that, even if the AFF is not money-mandating, the DEA "cannot deny claims under section 524 for an arbitrary and capricious reason." Pl.'s Resp. at 10. Plaintiff asserts that the language of 28 U.S.C. § 1491(b)(4), which says that "[i]n any action *under this subsection*, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5," (emphasis added). means that the Court has jurisdiction to review "arbitrary and capricious" agency decisions. Pl.'s Resp. at 11. However, Plaintiff ignores the fact that *subsection* (b) of § 1491 is irrelevant to this case, because it only applies to "solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," and not to review of agency decisions in general. 28 U.S.C. § 1491(b)(1). Furthermore, as Defendant correctly states in its motion, Plaintiff has failed to establish any basis for jurisdiction for this Court to review the DEA's decision. Def's Mot. at 7.

Because the only statutes over which this Court has jurisdiction are money-mandating statutes, and because the AFF is discretionary in nature, it is appropriate to grant Defendant's motion to dismiss count I based on the AFF.

Although this Court does not have jurisdiction under the AFF, it does possess jurisdiction under the Tucker Act, because claim I is a claim for monetary damages arising out of an alleged breach of contract by the United States, 28 U.S.C. § 1491(a)(1).[4] Therefore,

---

**3.** Section 1691, prior to 1986, contained such a sum certain, while the AFF never has. *See Doe*, 100 F.3d at 1579; *Hoch*, 33 Fed.Cl. at 44–45.

**4.** In its Order dated June 12, 2003, the Court denied Defendant's motion to dismiss Plaintiff's contract claim, as based on the Tucker Act.

this Opinion will still consider Plaintiff's claim I allegations based on the theory of breach of contract.

## B. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). However, courts "are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991), and a party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Further, "[a] genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 149 (7th Cir.1994).

## C. Defendant's Motion for Summary Judgment on Count I—Breach of Contract

Plaintiff alleges that it had an implied-in-fact contract with the government; to prove this. Plaintiff must demonstrate (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). Although Plaintiff has stated in his affidavit that he had an oral contract with the DEA, Pl.'s Supp. Br. Ex. 1; Pl.'s Aff. ¶ 4, that bare assertion is not sufficient to create a genuine issue of material fact, for the reasons listed below. Further,

Plaintiff has raised no genuine issue of material fact regarding actual authority, the fourth element required for a contract with the Government. Therefore, summary judgment is appropriate for Defendant on count I.

### 1. Mutuality of intent, consideration, and lack of ambiguity

■ Plaintiff has not raised a genuine issue of material fact with regard to any of the first three elements of a contract with the Government. In Plaintiff's affidavit, he states that, on or about July 17, 1995, he and DEA agents Teixeira and Mason "reached an oral agreement." and that "[b]oth sides were clear on what the terms of this work would be." Pl.'s Supp. Br. Ex. 1; Pl.'s Aff. ¶¶ 4, 6. Plaintiff further states that the DEA "promised [him] 25% of all seizures [he] effectuated for them in exchange for information [he] provided to them that led to these seizures." Pl.'s Supp. Br. Ex. 1; Pl.'s Aff. ¶ 2. However, an affidavit that Plaintiff wrote himself is not alone sufficient to survive a motion for summary judgment:

> The evidence that Plaintiffs placed before the [ ] court in support of the existence of these claimed oral agreements consisted predominantly of allegations contained in *[plaintiff]'s self-serving affidavit ....* [T]his Court has consistently repeated that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." In this case, there is a noticeable absence of evidence in the record to support the assertions contained in [the plaintiff]'s affidavit.

*Shank v. William R. Hague, Inc.,* 192 F.3d 675, 682 (7th Cir.1999) (citations omitted) (emphasis added); *see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 164 (Fed.Cir.1985) ("[M]ere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment.").

Something beyond Plaintiff's affidavit is needed before he can survive this summary judgment motion. For instance, the court in *Shank* found that plaintiff's failure to produce an affidavit or other evidence from any of the parties with whom he claimed to have

contracted supported the conclusion that the plaintiff did not have oral contracts with these parties. 192 F.3d at 682. In the current case, too, Plaintiff has presented no evidence to support his affidavit's claim that he had an oral contract with the DEA.[5] Plaintiff states that his allegation of a contract is supported by the fact that Mr. Teixeira and Ms. Mason paid him on numerous occasions through vouchers in which they were listed as "purchasers." Pl.'s Resp. at 9. However, this Court finds persuasive the reasoning in *Toranzo–Claure v. United States*, 48 Fed.Cl. 581, 582 (2001), in which the court found that evidence of prior payments to a DEA confidential informant did not support the plaintiff's contention that there was a contract, even though the plaintiff might have "hoped to be … paid for information." The *Toranzo–Claure* court then held that, "[w]hile that evidence might demonstrate that some earlier contractual obligation … had been paid, it does little to establish any subsequent contractual obligation." *Id.* Therefore, since previous payments by DEA cannot support his affidavit, and since Plaintiff has presented this Court with no other evidence that could support his claim of having a contract with the Government, summary judgment on count I is appropriate.

In contrast, Defendant has produced convincing evidence that no oral contract existed between Plaintiff and DEA. This is important because other courts have found that a plaintiff's lack of supporting evidence, combined with a defendant's strong presentation of evidence, makes the existence of a contract even more unlikely. *See, e.g., Shank*, 192 F.3d at 682 (stating that the existence of the plaintiff's alleged contract was unlikely, because the parties the plaintiff claimed to have contracted with typically used written contracts, and the terms plaintiff claimed were "in di-

rect conflict" with the terms those parties generally used). Similarly, in the case at bar, it would be inconsistent to find an oral contract with the DEA when "[t]he notion that DEA employees could contract in such a way so as to bind the agency to honor open-ended promises is [ ] not only inconsistent with the scheme set up by Section 524, but also would thwart the orderly delegation of limited authority." *Khairallah*, 43 Fed.Cl. at 64.

Further, Defendant has produced evidence, by way of affidavits, that Special Agents Mason and Teixeira deny that they made promises of "any payments or rewards" to Plaintiff. 2003 Decl. of Jessica Mason (hereinafter "Mason Aff.") ¶ 3; 2003 Decl. of Carlos Teixeira (hereinafter "Teixeira Aff.") ¶ 3; Def.'s Reply at A60–61. Defendant has also produced evidence of DEA agency procedures, which state that "advance commitment of funds *must have the approval of the concerned SAC* [special agent in charge] *or CA* [country attache]." Def.'s Supp. to Joint Prelim. Status Report Pursuant to Aug. 27, 2002 Special Procedures Order (hereinafter "Def.'s Supp.") App. 8.b.; DEA's Agents Manual ¶ 6612.61(A)(2) (emphasis added). Plaintiff makes no allegation that the alleged contract in this case was approved by the special agent in charge or the country attache.

When a motion for summary judgment is made, "the party opposing a motion for summary judgment must take reasonable steps to provide the [ ] court sufficient evidence to create a genuine issue of material fact to defeat the motion," *Shank*, 192 F.3d at 683, as summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of

5. Plaintiff does, however, repeatedly emphasize the fact that Defendant admitted that the DEA had, at one time, "obligated" itself to pay two awards to Plaintiff, but has since "deobligated" itself. Pl.'s Resp. at 3–4. However, Defendant points out that it uses the terms "obligate" and "deobligate" only in the context of governmental accounting. Def.'s Reply at 5–6. Defendant also cites a portion of *A Dictionary for Accountants* by Eric L. Kohler, which defines "deobligation," as used in government accounting, as "[t]he cancel-

lation of an encumbrance …, thereby releasing, to an unencumbered balance, funds previously reserved." Def.'s Reply at A63. Defendant also correctly points to the *Hoch* court's implication that the Attorney General's discretion under the AFF includes the discretion to withhold an award that was previously recommended. Def.'s Reply at 5; 33 Fed.Cl. at 45 ("This court may not evaluate such discretionary decisions and consequently cannot reach plaintiff's substantive arguments ….").

events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 503–04 (7th Cir.1999). Plaintiff has failed to do this with regard to the first 3 elements of a government contract. Therefore, Defendant's motion for summary judgment on count I of the complaint must be granted.

## 2. Actual authority to bind the Government

Even if Plaintiff had been able to show that there was a genuine issue of material fact as to the first three elements of a contract with the Government, he would still be unable to survive Defendant's motion for summary judgment because no one with actual authority to bind the Government had any interaction with Plaintiff.

### a. Agent authority

Plaintiff has the burden of showing that the person who allegedly made promises to him had contracting authority to bind the Government. *El Centro*, 922 F.2d at 820–21. Plaintiff has failed to meet this burden.

Defendant, however, has presented considerable evidence that no one with actual authority to bind the government made an express agreement with Plaintiff. According to the declaration of Ms. Christinia Sisk, Deputy Assistant Administrator for the Office of Acquisition Management of the DEA, she supervises all contract activities with the DEA. Def.'s Supp. Br. Discussing *Janowsky v. U.S.* and Institutional Ratification (hereinafter "Def.'s Supp. Br.") Ex. 1; 2003 Decl. of Christinia Sisk ¶ 1. A delegation of procurement authority (DPA) executed by her or her predecessor is required for a DEA employee to enter into contractual obligations on behalf of the DEA, and thus the United States, Federal Acquisition Regulations, 48 C.F.R. §§ 1.601, 1.602–1; Def.'s Supp. Br. Ex. 1: Sisk Aff. ¶ 4. Ms. Sisk stated in her affidavit that none of the DEA agents who associated with Plaintiff possessed contractual authority to obligate the government to pay Plaintiff the monetary compensation he seeks. Def.'s Supp. Br. Ex. 1; Sisk Aff. ¶ 5. Further, the DEA agents with whom Plaintiff interacted could not have possessed implied actual authority because, "where, as here, an agency

adopts internal procedures that preclude the employee from exercising such authority, it is totally inconsistent with the agency's actions to imply that the agency delegated or granted actual contracting authority. Hence, in such cases, the doctrine of implied actual authority should not apply." *Cruz–Pagan v. United States*, 35 Fed.Cl. 59, 63 (1996) (applying the test articulated in *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir.1989) to hold that DEA field agents do not have implied actual authority to enter into contracts with informants because contracting authority is not "an integral part of the duties assigned to [them]").

■ Plaintiff has failed to rebut Defendant's evidence. First, Plaintiff says that actual authority to bind the government was "unclear" and that Plaintiff's supervising agents, Mr. Carlos Teixeira and Ms. Jessica Mason, paid Plaintiff on numerous occasions through vouchers in which they were listed as "purchasers." Pl.'s Resp. at 9. However, the authority to make payments for awards, information, or expenses does not include a delegation to contract on behalf of the Government. Def.'s Supp. Br. Ex. 1; Sisk Aff. ¶ 4. Plaintiff also states that the two agents "expressly told [him] that they had the authority to make these promises." Pl.'s Aff. ¶ 4. However, this argument is not relevant, as the issue is whether the agents *actually possessed* the authority to enter into contracts on behalf of the DEA, not whether the Plaintiff *believed* that they had such authority. As the Supreme Court has said, "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Cmty. Health Serv. of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (citation omitted); *see also Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed.Cir.1998), *cert. denied*, 525 U.S. 1177, 119 S.Ct. 1111, 143 L.Ed.2d 107 (1999) ("The fact that [the plaintiff] may have believed that the CO [contracting officer] had authority is irrelevant; [the plaintiff] must prove that the CO had actual authority.") (citation omitted). Therefore, the Court finds that Plaintiff has not produced enough

evidence to survive a motion for summary judgment on the issue of actual authority.

### b. Institutional ratification

Plaintiff has a stronger argument, however, when he alleges that the element of authority to bind the Government is met by DEA's "institutional ratification." Ultimately, though, this argument must also fail.

Plaintiff's argument is based on the Federal Circuit's rationale in *Janowsky v. United States*, 133 F.3d 888 (Fed.Cir.1998). Pl. John Doe's Supp. Brief (hereinafter "Pl.'s Supp. Br.") at 1. In *Janowsky*, the court stated that a plaintiff alleging a breach of contract by the government must prove that he or she contracted with an agent authorized to bind the government. *Id.* at 891. The court found that summary judgment was inappropriate because a genuine issue of material fact existed as to whether the Federal Bureau of Investigations (FBI) had ratified the plaintiff's proposed contract by allowing the sting operation at issue to continue and by retaining the resulting benefits. *Id.* at 892. The pertinent factors relied upon by the Federal Circuit were that the agents lacking contracting authority had some similar type of authority, that at least some agents were aware of a proposed agreement detailing the plaintiff's contractual remuneration, and that the Government received a direct benefit from the unauthorized contract. *Id.* at 889–92. The Federal Circuit further stated, in *Harbert/Lummus Agrifuels*, that ratification requires the ratifying officials to have actual or constructive knowledge of the unauthorized acts and to demonstrate acceptance of the contract. 142 F.3d at 1433.

In the present case, Plaintiff's attempt to satisfy this element of a valid contract turns on a factual analysis of the factors necessary for ratification. Viewing the facts in the light most favorable to Plaintiff, as is required by *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, it appears that the agents working with Plaintiff did have some authority (such as the authority to administer vouchers for his efforts) and that Defendant did benefit from information provided by Plaintiff, both of which are facts that Defendant does not appear to contest. *See* DPFUF ¶¶ 4–5. As Plaintiff states, "[The DEA] knew of Plaintiff's work, it allowed him to continue working as an informer, and it accepted the fruits ... of that work." Pl's Resp. at 17. Although Plaintiff's statement appears to be true, there are three flaws in his reasoning: (1) the DEA's level of knowledge is insufficient; (2) no affirmative action was taken by the DEA that could justify a finding of imputed knowledge; and (3) agency procedures were not followed.

■ First, knowledge "of Plaintiff's work" is not enough. For there to be ratification, the ratifying officials must "have actual or constructive knowledge of the unauthorized facts ... [which] 'can only be based upon a *full knowledge* of all the facts upon which the unauthorized action was taken.'" *Harbert/Lummus Agrifuels*, 142 F.3d at 1433 (emphasis added) (quoting *United States v. Beebe*, 180 U.S. 343, 354, 21 S.Ct. 371, 45 L.Ed. 563 (1901)). Knowledge is the key distinguishing factor in all cases discussing institutional ratification; that is, in the absence of some indication, beyond mere assertions, that officials with ratifying authority knew of the unlawful promise, institutional ratification has not been upheld.[6]

■ Thus, the question is whether DEA agents with procurement authority had actual or constructive knowledge of contractual promises to compensate Plaintiff and whether they accepted those promises. In Plaintiff's affidavit, he claims that he was told "that the payments had even been approved by high ranking [sic] officials at DEA." Pl.'s Supp. Br. Ex. 1; Pl.'s Aff. ¶ 11. However, nowhere in Plaintiff's pleadings does he claim that these "high-ranking officials" knew of the content of the alleged promises made to him by agents Teixeira and Mason. According to the declaration of Ms. Christinia Sisk, who supervises all contract activities with the DEA, she has not ratified "any unauthorized commitments to make an award payment [to Plaintiff] ... on behalf of DEA." Def.'s Supp. Br. Ex. 1; Sisk Aff. ¶ 3. Further, according to an affidavit by Mr. James Whetstone, Ms.

---

**6.** *See* discussion *infra*.

Sisk's predecessor, he did not ratify the contract during the period of April 1991 through January 1999. Def.'s Supp. Br. Ex. 2; 2003 Decl. of James Whetstone ¶ 3.

In many cases, one indicator of knowledge is the presence of some written communication between the parties. For example, in *Perri v. United States*, a case quite similar to the present case, the court denied compensation to a former confidential informant based on an alleged oral promise, rejecting institutional ratification where "there [wa]s no convincing evidence of any unauthorized promise or contract on which a ratification can even be advanced." 53 Fed.Cl. 381, 405 (2002). The court convincingly distinguished *Janowsky* and *Dolmatch Grp., Ltd. v. United States*, 40 Fed.Cl. 431 (Fed.Cl.1998), saying that, in those cases, "there was undisputed documentation of the proposed contracts at issue." *Id.* Although *Janowsky* did not explicitly mention the knowledge requirement, the plaintiff in that case had submitted a proposed contract to the FBI special agent in charge. The special agent in charge, in response, formulated and submitted to the plaintiff a "different proposed agreement, *with the FBI Headquarters' August 1985 modifications*." 133 F.3d at 889–90 (emphasis added). This language indicates that the FBI had reviewed Janowsky's proposal and had made changes. It also suggests that it was likely that FBI headquarters knew of the plaintiff's mistaken reliance on a written payment contract. Similarly, in *Dolmatch*, 40 Fed.Cl. 431, the court denied summary judgment because there was at least some possibility, supported by conflicting evidence, that an official with ratifying authority knew about the plaintiff's expectation of compensation. Hence, there was a slim chance, supported by the fact that the official had received *written* communication, that the official knew of and acquiesced to the promise. *Id.* at 438–39. No such documentation is available in the present case, with the exception of the Agreement, which mentions nothing with regard to Plaintiff's expectation of compensation, and which Plaintiff admits "was only an acknowledgment by [him] of what [he] could *not* do while performing [his] duties." Pl.'s Supp.

Br. Ex. 1; Pl's Aff. ¶ 4 (emphasis in original).

Further, in *Khairallah*, a case of strikingly similar facts, the plaintiff claimed that the DEA had promised him 25% of the value of assets seized as a result of his confidential information, 43 Fed.Cl. at 58. The plaintiff in that case proceeded on legal theories akin to the ones Plaintiff presents, but the court found that the most persuasive evidence of institutional ratification consisted of an alleged "intercession" by an Assistant Administrator for DEA Operations, who had contracting authority, and who instructed the field office to " 'expedite the paperwork to make sure plaintiff would get paid.' " *Id.* at 64. Even with this evidence, however, the Court of Claims rejected Plaintiff's argument, saying.

> Ratification requires knowing acquiescence to an unauthorized agreement by a superior who has contracting authority. [Therefore], plaintiff must produce evidence that [the official] acted in such a manner as to manifest "knowing acquiescence" to [the] agreement .... [A]t the time of the alleged "ratification," plaintiff was asserting an entitlement based on Section 524. There is no reason to think that [the official] would have viewed the request any differently. The statement [of the official] ... is thus fully consistent with the discretionary payment of awards under Section 524, and is no evidence that [the official] was ratifying a contractual arrangement.

*Id.* at 64–65 (citations omitted). This Court agrees with the reasoning in *Khairallah*. A statement instructing the field office to expedite paperwork has nothing to do with the substance of the plaintiff's claim, but is instead only relevant to the timing. Therefore, it makes sense that such a statement would not be evidence of ratification of the contract. The situation is very similar here. Plaintiff would have to assert and produce evidence that an officer of ratifying authority constructively or actually knew of the alleged oral promises made by Special Agents Mason and Teixeira. Plaintiff's allegation that DEA "ratified" payment by obligating funds in the amount of $199.800 under Section 524 does not suffice, because there is no evidence that

this payment request was made subsequent to a promise, or that government officials with contracting authority knew of any such promise. Pl.'s Resp. at 3. This was a discretionary payment; funds could be obligated and de-obligated for many reasons. *See, e.g.,* Def.'s Supp.App. 8.b.; DEA's Agents Manual ¶¶ 6612.67(B), 6612.81. To overcome his burden of production, Plaintiff has to make an initial showing that the payment was not ratified as part of government discretion, but was instead ratified in acquiescence to an unlawful promise.[7] Plaintiff has failed to do this.

Second, Plaintiff cannot show that there was *active* acceptance of his alleged contract; therefore, he cannot charge the DEA with imputed knowledge of the contract either. *See Harbert/Lummus Agrifuels,* 142 F.3d at 1433. For a claim of imputed knowledge to succeed, the acceptance by the DEA would have to be active in nature, and silence will *not* suffice. *Id.* at 1433–34 ("In the absence of either actual or constructive knowledge of the unilateral contract, the CO's [contracting officer's] silence cannot be a ratification of the unilateral .contract. Moreover, ratification must also be based on a *demonstrated acceptance of the contract.*") (emphasis added). In the *Harbert/Lummus Agrifuels* case, the Federal Circuit said that "[t]he mere fact that Harbert/Lummus continued performing its construction activities would not have put the CO [contracting officer] on notice of the existence of a new, unilateral contract because Harbert/Lummus had been performing its construction activities before the offer . . . ." *Id.* at 1433.[8] Similarly, Plaintiff had been working as a confidential informant for the DEA since 1993, long before the alleged oral contract occurred, which further supports the finding that there was no imput-

ed knowledge by the DEA. Pl.'s Supp. Br. Ex. 1; Pl.'s Aff. ¶ 3. Further, Plaintiff has not pointed to any such active acceptance or ratification of the contract he allegedly had with the DEA. Instead, Plaintiff states that "there was an implied-in-fact contract that was ratified by *allowing* plaintiff to continue to work as an informer knowing that he expected payment." Pl.'s Resp. at 16 (emphasis added). The fact that the DEA allegedly "allowed" Plaintiff to continue working implies that there was no *explicit* ratification, but, in fact, only silence. Therefore, Plaintiff has no claim of active acceptance, or imputed knowledge, by the DEA.

Finally, "agency procedures must be followed before a binding contract can be formed." *Harbert/Lummus Agrifuels,* 142 F.3d at 1433 (citation omitted). In *Dolmatch Grp.,* the court denied summary judgment to Defendant, partially because the governmental body's internal regulations pertaining to the delegation of contracting authority were vague, 40 Fed.Cl. at 439. In contrast, the DEA's procedures on contracting authority are not vague: "A CS [confidential source] may be paid on a commission basis. However, the use of this approach must be minimized. Any such advance commitment of funds *must have the approval of the concerned SAC* [special agent in charge] *or CA* [country attache]." Def.'s Supp.App. 8.b.; DEA's Agents Manual ¶ 6612.61(A)(2) (emphasis added). Neither Special Agent Teixeira nor Special Agent Mason held the position of SAC or CA, and Plaintiff never alleges that either agent was the special agent in charge or the country attache. Pl.'s Supp. Br. Ex. 1; Pl.'s Aff. ¶ 4 (referring to Teixeira and Mason as "Special Agents"). Further, the DEA's manual also provides

---

7. It is not even clear whether anyone with ratification authority actually signed off on a payment to Plaintiff. In fact, Defendant denies this. *See* June 12, 2003 Tr. at 42.

8. Plaintiff claims that *Harbert/Lummus* is not on point, because it does not address the concept of institutional ratification. Pl.'s Supp. Br. at 4. But Plaintiff appears to place too much weight on an unimportant semantic distinction. While the Court in *Harbert/Lummus Agrifuels* did not use the term "institutional ratification," this appears to be primarily because the plaintiffs in that case could identify an individual officer who

was *physically present* when the disputed promise was made. 142 F.3d at 1433. There was no need, then, for plaintiffs to explore the vagaries of "institutional" ratification, where the issue was clearly whether the empowered officer had—obviously on behalf of the institution—ratified the contract. This does not mean, however, that knowledge does not enter the discussion over institutional ratification, where, as here, the Plaintiff cannot identify a single individual who knew or should have known of the unlawful promise.

that "[t]he fee arrangement will be discussed with the CS in detail, and *provided to the CS in writing.* The agreement will be signed by the CS and countersigned by the provider and a witness." Def.'s Supp.App. 8.b.; DEA's Agents Manual ¶ 6612.61(A)(2) (emphasis added). Plaintiff has made no allegation that such a written document exists. Plaintiff even admits that "the DEA manual tells government agents that they're not suppose [sic][to] enter into contracts. But of course, that doesn't mean whether they did or they didn't." June 12, 2003 Tr. at 42. This indicates that Plaintiff believes that Special Agents Teixeira and Mason lacked the requisite authority, but that they entered into a contract with him anyway. The language suggests that, even if the DEA agents contracted with Plaintiff, agency procedures were not followed; therefore, no contract can exist.

For the reasons stated above, the Court must grant Defendant summary judgment on count I of Plaintiff's complaint.

### D. Defendant's Motion for Summary Judgment on Count II—Unjust Enrichment

Plaintiff contends that this Court has jurisdiction over count II, under the theory that unjust enrichment can be brought as an implied-in-fact contract claim.

■ It is undisputed that the Court of Federal Claims has no jurisdiction over implied-in-law contracts. *Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *El Centro,* 922 F.2d at 823 ("[T]he Government has long been held immune for such claims for relief.") (citation omitted). However, the Court does have jurisdiction over implied-in-fact contracts under the Tucker Act. *See Hercules,* 516 U.S. at 423, 116 S.Ct. 981; *Gould, Inc. v. United States,* 67 F.3d 925, 928 (Fed. Cir.1995). An implied-in-fact contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co., v. United States,* 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923) (citation omitted).

■ However, for Plaintiff to survive Defendant's motion for summary judgment with regard to count II, a contract must have existed at one time between Plaintiff and the Government. Since Plaintiff has been unable to show a genuine issue of material fact to as to whether an implied-in-fact contract was present.[9] summary judgment is appropriate on count II of Plaintiff's complaint. *See Perri,* 53 Fed.Cl. at 408–09; *Mega Constr. Co. v. United States,* 29 Fed.Cl. 396, 472 (1993).

Plaintiff contends that Defendant "received the benefit of numerous seizures worth millions of dollars ... with its full appreciation and knowledge." Compl. ¶ 29, and that Defendant "accepted and retained this benefit." Compl. ¶ 30. Therefore, he cites to a variety of cases to support his proposition that he is entitled to compensation under the theory of unjust enrichment. However, all of the cases Plaintiff mentions are distinguishable, in that a contract had *once existed* in each case, but was later deemed invalid. See *United States v. Amdahl Corp.,* 786 F.2d 387, 393 (Fed.Cir. 1986), in which the Federal Circuit states, "[t]he contractor is not compensated *under* the contract, but rather under an implied-in-fact contract." This is an important distinction for two reasons: (1) the use of the above language suggests that the plaintiff had originally had an *express* contract, and must resort to an unjust enrichment theory only because the original express contract was found to be invalid; and (2) the Federal Circuit has interpreted that language from *Amdahl* to mean that a party "can be compensated under an implied-in-fact contract when the [plaintiff] confers a benefit to the government in the course of performing a government contract that is subsequently declared invalid." *Gould,* 67 F.3d at 930.

For instance, *Gould* is distinguishable from the present case because it involved a *written* contract that was later found to be illegal. *Id.* at 927; *see also Urban Data Sys., Inc. v. United States,* 699 F.2d 1147, 1154 (Fed.Cir.

---

9. *See* discussion of count I at Part C., *supra.*

1983) (finding that "it is clear ... that the Government bargained for, agreed to pay for, and accepted the supplies delivered by Urban. It is also plain that only the price terms of the two subcontracts were invalid—not any other part of those agreements. We agree with the Board that Urban is entitled to reimbursement on a *quantum valebant* basis for the reasonable value in the marketplace of the supplies and concomitant services."); *Gold Line Refining, Ltd. v. United States,* 43 Fed.Cl. 291 (1999) (upholding a claim for unjust enrichment on the basis of a prior contract deemed illegal); *Farmers Grain Co. v. United States,* 29 Fed.Cl. 684, 685–87 (1993) (finding that an unjust enrichment claim was proper where the parties had entered into an agreement but the plaintiff had delayed its claim for compensation); *United Int'l Investigative Serv. v. United States,* 26 Cl.Ct. 892, 899 (1992) (finding that there was an initially valid contract that might have been transferred in violation of the Anti–Assignment Act).

Thus, unlike in *Amdahl,* where the contract was held to violate applicable statutes, and *Prestex, Inc. v. United States,* where the contract was held to be invalid because the contracting officer had exceeded his authority, it is much more difficult to show an initial bona fide contract instrument for the case at bar. *See Amdahl,* 786 F.2d at 393; *Prestex,* 162 Ct.Cl. 620, 320 F.2d 367, 371 (1963). Simply put, there was no express or implied-in-fact contract in the current case to begin with. As stated by this court in *Perri,* 53 Fed.Cl. at 409:

> The cases cited by plaintiff are factually distinguishable from the case at bar ... because they involved *bona fide contract instruments* which became or were determined to be illegal or void at some point in the undertaking between the parties. There was no question in each of those cases that the plaintiff and the Government had intended to enter into a contract and that the Government had received benefits as a result of the plaintiff's performance of the intended contracts .... [Here] the record contains no evidence of any contract instrument or oral agreement, legal or illegal, authorized or unauthorized, giving credence to the existence of the compensation promise alleged by the plaintiff.

All the cases Plaintiff cites to involve fully executed written instruments, where all elements of a contract are unambiguously present. Plaintiff has not presented any such evidence. Although some of the cases above involved contracts in which a government agent exceeded his or her authority, in each of those cases, all of the other elements of a valid contract with the Government were present. Therefore, Defendant must be granted summary judgment on count II.

### E. Plaintiff's Cross–Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on his claim for $199,800. To recover, Plaintiff bases his claim on the AFF statute. Specifically, Plaintiff states that Defendant has admitted that it owes Plaintiff $199,8000. Pl.'s Resp. at 17. Plaintiff seems to be referring to Defendant's proposed findings of uncontroverted facts (¶ 6), in which Defendant states that on April 13, 1999, Mr. Teixeira submitted a request for payment under the AFF statute in the amount of 20% of the currency seized on June 29, 1998, a total of $199,800.

Plaintiff's argument is flawed, however, because it assumes that the AFF statute is money-mandating. As explained above, the AFF statute gives full discretion to the Attorney General or his designee to determine when funds are dispersed as a reward for information.[10] When the DEA became aware of Plaintiff's alleged involvement in a cocaine-smuggling scheme (of which he was later acquitted), Plaintiff was deactivated as a confidential informer and the funds that had been set aside by the DEA were "deobligated" in accordance with the DEA's financial protocol. DPFUF ¶¶ 14–15. The Court does not possess jurisdiction to reverse such a decision because of the discretion afforded the Attorney General pursuant to the AFF statute.

**10.** *See* discussion *supra* Part A.

While the theory for Plaintiff's cross-motion for summary judgment is unclear, the cross-motion might include an argument that Plaintiff is entitled to the $199,800 under the alternative theory of breach of contract. However, because Plaintiff did not have a valid contract with the government,[11] he cannot recover the $199,800 based on a breach of that contract.

Therefore, it is appropriate to deny Plaintiff's cross-motion for partial summary judgment.

## IV. Conclusion

This Court has no jurisdiction over the AFF statute because that statute is not money-mandating. Therefore, Defendant's motion to dismiss as to count I, based on lack of jurisdiction over the AFF statute, is GRANTED.

Further, Plaintiff and Defendant did not have a valid contract at any point in time. As a result, there is no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on the breach of contract portion of count I and on count II of Plaintiff's complaint. For the reasons stated above, Defendant's motion for summary judgment is hereby GRANTED.

As a result of the Court's findings that it has no jurisdiction over claims based on the AFF statute and that Plaintiff and Defendant did not enter into a contract, Plaintiff's cross-motion for partial summary judgment is DENIED.

The Clerk's Office is instructed to dismiss the AFF basis of count I with prejudice and enter judgment for Defendant on the breach of contract portion of count I and on count II.

---

11. *See* discussion, *supra* Part C.