**Jan PIJANOWSKI, M.D., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–238 C.**

United States Court of Federal Claims.

May 14, 2004.

Neal S. Sanders, Butler, PA, attorney of record for plaintiff.

David R. Feniger, Washington, D.C., Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Franklin E. White, Jr., Assistant Director, for defendant.

---

## OPINION

MEROW, Senior Judge.

Plaintiff, Dr. Jan Pijanowski, seeks monetary damages for an alleged breach of an implied-in-fact contract with the Department of Veteran Affairs ("VA") to provide medical services for a minimum number of weekend and night shifts.[1] Plaintiff claims that the contract provided that he would be assigned to a minimum of two weekend shifts per month and approximately twelve night shifts per month. The matter is now before the court on defendant's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). In the alternative, defendant moves to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). For the reasons stated below, defendant's motion is **GRANTED**.

### Background

The following facts are derived from plaintiff's complaint and opposition to defendant's motion to dismiss. They are undisputed for purposes of this motion. Dr. Pijanowski was appointed as a physician by the VA pursuant to 38 U.S.C. § 7405(a)(2). Section 7405(a) provides, in relevant part, that the "Secretary, upon recommendation of the Under Secretary for Health, may employ, without regard to civil service or classification laws, rules, or regulations, personnel as follows: ... (2) On a fee basis, persons in the following positions: (A) Positions listed in section 7401(1) of this title." [2] Section 7405(b)(2) states that "personnel employed under subsection (a) ... shall be paid such rates of pay as the Secretary may prescribe." On July 18, 1994, Dr. Pijanowski received a letter from the Department of Veteran Affairs Medical Center in Butler, Pennsylvania ("VAMC") informing him that:

This letter designates you as a physician to perform services for the Department of Veteran Affairs on a fee basis under the authority of Section 7405(a)(2), Chapter 73, Title 38, U.S.C. Your services will be utilized as Admitting Officer-of-the-Day as scheduled by the Chief of Staff.

You will be paid the sum of $840 for services performed on Saturdays, Sundays and holidays from 8 a.m. and ending the following morning at 8 a.m. You will be paid the sum of $420 for services performed on weekdays from 8 p.m. and ending the following morning at 8 a.m.

Def.'s Ex. 2.

During the interview process, plaintiff maintains that he informed Dr. P. Stajduhar, the medical center director, that he required a certain number of shifts before he would agree to take the position. In response, Dr. Stajduhar allegedly stated that plaintiff could work at least two weekend shifts and approximately twelve night shifts per month. Pl.'s Opp. to Def.'s Mot. to Dismiss at 6. Subsequently, Dr. Marwaha took over the position of director of the medical center and reaffirmed that plaintiff would be able to work for the same minimum number of shifts each month. Dr. Pijanowski also submits that he had several conversations with various secretaries during which he scheduled his shifts each month according to this alleged agreement. On May 6, 1998, in a memorandum signed by the Acting Chief of Staff for the VA, all admitting officers received a pay increase to $40 per hour for weeknight shifts, $50 per hour for weekend shifts, and $60 per hour for holidays. Def.'s Ex. 4.

On July 28, 1998, plaintiff's application for renewal of clinical privileges was approved for a two year period. Def.'s Ex. 5. From July 1994 though September 1998, plaintiff

---

1. In plaintiff's complaint, he alleged a breach of an express contract to provide him with a minimum of ten twelve hour shifts and three twenty-four hour shifts each month. In addition, an implied term of the express contract was that plaintiff would be assigned the same number of shifts as other similarly situated physicians. Pl.'s Compl. at ¶¶ 6–7. After discovery was completed in this case, plaintiff conceded that there was no express contract to assign him a minimum number of shifts per month. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 5. However, plaintiff never

formally filed an amended complaint pursuant to RCFC 15(b).

2. 38 U.S.C. § 7401(1) states: "There may be appointed by the Secretary such personnel as the Secretary may find necessary for the medical care of veterans ... as follows: (1) Physicians, dentists, podiatrists, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries."

received, at a minimum, the number of shifts that were discussed during the interview process. According to plaintiff, he was scheduled for an average of 11.75 night shifts and 3.75 weekend shifts per month during this time period. Beginning in October 1998, plaintiff contends that the VA began to reduce the number of shifts assigned to him. From October 1998 to September 1999, plaintiff submits that he was scheduled for an average of 7.83 night shifts and 1.4 weekend shifts per month. Dr. Pijanowski eventually resigned from his position because of what he perceived as a significant loss in the number of shifts each month. Based on the hourly pay rates set forth in the May 6, 1998 memoranda, plaintiff seeks damages for lost income in the amount of $56,640.

## Discussion

### I. Motion to Dismiss For Lack of Subject Matter Jurisdiction

The government contends that plaintiff's complaint must be dismissed for lack of subject matter jurisdiction because it fails to allege, and cannot establish, the existence of an implied-in-fact contract. Specifically, defendant submits that none of the VA officials who allegedly promised him a minimum number of shifts had any authority to bind the government to such a contract. In considering a motion to dismiss, the burden of establishing jurisdiction is on the plaintiff. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991); *Reynolds v. Army & Air Force Exch. Svc.*, 846 F.2d 746, 748 (Fed.Cir.1988). In order to evaluate the merits of defendant's motion asserting lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint must be presumed to be true and construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, if the defendant challenges the truth of the jurisdictional facts alleged in the complaint, the court may expand its consideration of evidence beyond the pleadings. *Bergman v. United States*, 28 Fed.Cl. 580, 584 (1993) (holding that the court may consider evidentiary matters outside the pleadings in deciding motion pursu-

ant to RCFC 12(b)(1)). "The court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Pride v. United States*, 40 Fed.Cl. 730, 732 (1998) (quoting *Farmers Grain Co. v. United States*, 29 Fed.Cl. 684, 686 (1993)); *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993) (when jurisdiction is at issue, the court is not limited to the pleadings).

Under the Tucker Act, 28 U.S.C. § 1491(a), this court has "jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States ...." The Tucker Act, by itself, "does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Instead, plaintiff "must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages." *Khan v. United States*, 201 F.3d 1375, 1378 (Fed. Cir.2000) (citing *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998)).

### II. Motion to Dismiss for Failure to State a Claim

In the event that jurisdiction is established, defendant seeks dismissal of plaintiff's complaint for failure to state a claim, pursuant to RCFC 12(b)(6). A complaint cannot be dismissed for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997). In resolving the motion the court "must accept plaintiff's factual allegations in the complaint as true, drawing all inferences in favor of the plaintiff." *Ponder v. United States*, 117 F.3d 549, 552 (Fed.Cir. 1997).

## III. Implied–In–Fact Contract

Although plaintiff admits that the original complaint alleged an express contract, he responds that the court has jurisdiction over his claim for breach of an implied-in-fact contract. Plaintiff's claim does not allege that he is owed money for hours which he actually worked. Rather, it seeks money for time that he was promised but did not receive. However, the fact that plaintiff was assigned a certain number of hours in the past does not necessarily result in the creation of a contractual obligation to provide the same number of hours in the future. *See Doe v. United States*, 58 Fed.Cl. 479, 484 (2003) (holding that evidence of past payment to a confidential informant did not establish subsequent contractual obligation.); *Toranzo–Claure v. United States*, 48 Fed.Cl. 581, 582 (2001) (same). According to plaintiff, the alleged oral promises he received during the interview process in conjunction with the fact that he was assigned the minimum number of hours for a period of time resulted in an "agreement 'implied in fact,' founded upon a meeting of minds ... inferred, as a fact, from the conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923).

■ In order to demonstrate an implied-in-fact contract, plaintiff must demonstrate "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed.Cir. 2003) (citing *Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1346 (2001); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990); *Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474, 481–82 (Ct.Cl.1976)). These four requirements apply to express and implied-in-fact contracts. *Trauma Serv. Group*, 104 F.3d at 1325.

■ In essence, plaintiff claims that an agreement with the medical center director as to the amount of hours executed pursuant to a statute authorizing the Secretary to appoint physicians on a fee basis forms a binding contract. However, the "statutory scheme ... clearly establishes that he was a federal employee rather than an independent contractor." *Ezekiel v. Michel*, 66 F.3d 894, 900 (7th Cir.1995); *See also Carrillo v. United States*, 5 F.3d 1302, 1305 (9th Cir.1993) (holding that physicians appointed pursuant to 38 U.S.C. § 7405 are government "personnel."); *Khan*, 201 F.3d at 1376 (acknowledging that a physician appointed under 38 U.S.C. § 7401(1) was "employed" by the VA.). Section 7405 explicitly states that the VA Secretary may "employ" physicians on a fee basis and prescribe the rate of pay. The same statutory structure demonstrates that plaintiff's employment is not premised on a guaranteed minimum number of hours. This is in contrast to statutory appointments made pursuant to section 7401. Under section 7401, physicians are employed on a permanent basis and their pay grade is governed by "Executive order as authorized by Chapter 53 of title 5 [5 U.S.C. §§ 5301 et seq.] or as otherwise authorized by law." 38 U.S.C. § 7404(b)(1). In addition, section 7405(a)(1) provides for employment on a temporary full-time, part-time, or no compensation basis. 38 U.S.C. § 7405(a)(1). Instead, plaintiff was appointed pursuant to a statute specifying that pay and length of employment was subject to change according to the VA Secretary. Plaintiff was put on notice that his statutory appointment did not provide for a full-time or even part-time basis.

The medical center director may not exceed the scope of authority granted to him by the VA secretary. As the Federal Circuit has explained, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *City of El Centro*, 922 F.2d at 820. Furthermore, the "scope of this authority may be explicitly defined by Congress or through the rule-making power." *Id.* In conceding the lack of an express contract, plaintiff admits that none of the written documents guaranteed a minimum number of hours. The appointment letter informed plaintiff that his services would be utilized "as scheduled by

the Chief of Staff." Def.'s Ex. 2. Therefore, plaintiff's appointment was subject to change according to the needs of the medical center as determined by the Chief of Staff. The fact that plaintiff may have requested a minimum number of hours that originally fulfilled the hospital's needs did not prohibit the medical center director from adjusting the number of hours if those needs changed. When Congress enacted section 7405, it "intended to give the VA authority to hire additional personnel on a fee-basis in order to obtain the services of qualified personnel without the constraints of the classification laws, which require equal pay for performances of similar jobs in the federal government." *Orloff v. Cleland,* 708 F.2d 372, 376 (9th Cir. 1983) (discussing enactment of what is now codified at 38 U.S.C. § 7405). This would allow the VA to "employ or discharge doctors without the usual time-consuming and detailed civil service procedures." *Id.* Furthermore, the authority to schedule plaintiff's hours "does not include a delegation to contract on behalf of the Government." *Doe,* 58 Fed.Cl. at 485.

According to the declaration of Stephen E. Harding, the VAMC senior contracting officer, he is authorized to enter into contracts on behalf of the VAMC. *See* Decl. of Stephen E. Harding ("Harding Decl."), Aug. 29, 2003 at ¶ 5, App. to Def.'s Mot. to Dismiss at 2. He may delegate contracting authority by issuing warrants to the relevant VMAC personnel. Harding Decl. at ¶ 3; 48 C.F.R. § 1.601, et seq. Mr. Harding states that neither Dr. Stajduhar, Dr. Marwaha, or their secretaries were delegated authority to enter into any contracts on behalf of the medical center. Harding Decl. at ¶ 5. Plaintiff makes no allegation that this alleged implied-in-fact contract was ever approved by the contracting officer or that he delegated such authority to the officials discussed above. The fact that the individuals who allegedly promised plaintiff a certain number of hours are the ones responsible for scheduling does not mean that they actually possessed the authority to enter into binding contracts on behalf of the government. Individuals "who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law."

*Heckler v. Cmty. Health Serv. of Crawford County, Inc.,* 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *see also Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1432–33 (Fed.Cir.1998). Therefore, plaintiff's claim must be dismissed because he has failed to demonstrate the requirements necessary for an implied-in-fact contract. Appointment to a federal position is contrary to the establishment of a contractual relationship. *See United States v. Hopkins,* 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976).

### CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Defendant's Motion to Dismiss is **GRANTED**.

(2) Final Judgment shall be entered **DISMISSING** the Complaint, with **NO COSTS** assessed.