**Sean CALVIN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

Nos. 04–715–C, 04–715A–C, 04–715B–C, 04–715C–C, 04–715D–C, 04–715E–C, 04–715F–C, 04–715G–C, 04–715H–C, 04–715I–C.

United States Court of Federal Claims.

Jan. 12, 2005.

Charles Thomas Hvass, Jr., Hvass, Weisman & King, Minneapolis, MN, for plaintiffs.

Claudia Burke, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs was Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director. Of counsel was Janessa Grady, Office of Chief Counsel, Transportation Security Administration, Arlington, VA.

## OPINION AND ORDER

LETTOW, Judge.

These consolidated cases stem from salary promises allegedly made to the plaintiffs prior to their appointments as security screeners for the Transportation Security Administration ("TSA"), that were not fulfilled upon their commencement of work. Plaintiffs sued for breach of contract, seeking lost wages and benefits.[1] The government filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief may be granted under RCFC 12(b)(6), arguing that the plaintiffs were appointed to their positions, that the alleged promises were made prior to the appointments, and that this court lacks jurisdiction over broken promises to conditional appointees. Plaintiffs respond that they were hired by contract, not appointment, and that they were

---

1. Ten plaintiffs joined in filing the original complaint: Sean Calvin, Phillip Finocchinaro, Douglas Gibson, Roger Green, Jeffrey Hayden, Richard Lakso, Joe Spiller, Irene Staber, Shirley Talberg, and Scott Vaneps. Because each plaintiff in essence claimed that he or she had entered into a separate contract for employment with TSA, joinder of the plaintiffs was improper under Rule 20 of the Rules of the Court of Federal Claims. *See Franconia Assocs. v. United States*, 61 Fed.Cl. 335, 336–37 (2004); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1653, at 403–08 (3d ed.2001) (citing numerous cases). The claims of the plaintiffs were accordingly severed, one from another, and then, because of the common questions of law and fact, consolidated for purposes of proceedings on the pending motion. Order of November 29, 2004.

also third party beneficiaries of a breached contract between TSA and their former employer. Defendant's motion to dismiss is granted for the reasons that follow. In essence, the court concludes that plaintiffs were appointees, that their remuneration was and is premised upon their appointments, not on contract, and that this court lacks jurisdiction to provide damages in amounts that exceed the pay for their appointed grade and rate.

## BACKGROUND [2]

On November 19, 2001, the Aviation and Transportation Security Act ("ATSA"), Pub.L. No. 107–71, 115 Stat. 597, was enacted, creating the Transportation Security Administration as a part of the Department of Transportation, with the mission of federalizing airport security.[3] The new agency undertook to perform all passenger screening operations beginning on November 19, 2002, and to screen all baggage commencing on December 31, 2002. Pls.' App. at 65 (Offer Letter for Scott Vaneps). To build up the necessary workforce, TSA paid a number of companies to hire screeners. Hr'g Tr. 8. For the Minneapolis/St. Paul International Airport ("MSP Airport"), an entity called NCS Pearson was responsible for such hiring. *Id.; see also* Pls.' Resp. at 1.[4]

During the period in which the new federal employees were being identified and hired, because the airports continued to operate, someone needed to screen passengers and baggage. TSA asked Globe Security, the private company that had been responsible for screening at the MSP Airport prior to the passage of ATSA, to continue to perform security screening during the appointment process. Pls.' App. at 8 (Letter from the Fed. Sec. Dir. of the Transp. Sec. Admin. in Minneapolis/St. Paul to the Assistant Adm'r for Human Res. Mgmt.). At the end of the transition period, the Globe screeners and supervisors could apply for TSA positions, and, if hired, supposedly could receive the same salaries they received at Globe, which were higher than the base TSA wages. *Id.*

Seven of the consolidated plaintiffs, Mr. Finocchinaro, Mr. Gibson, Mr. Green, Mr. Spiller, Ms. Staber, Ms. Talberg, and Mr. Vaneps, are former Globe employees hired by TSA as security screeners. These plaintiffs received offers of conditional appointment that listed salaries; however, they each received actual appointments that paid approximately $2,000 less than the offered amounts per year.[5] Purportedly due to budget constraints, the plaintiffs never received an adjustment to reflect the same hourly rate they had received at Globe. *See* Pls.' App. at 55 (Letter from Assistant Adm'r for Human Res. Mgmt. to Shirley Talberg) (blaming the "staffing challenge [of appointing the optimal number of screeners] and the budget environment in which we are operating" for the failure to adjust the plaintiffs' pay); Hr'g Tr. 40.[6]

2. The factual recitation stated here does not constitute findings of fact by the court. Rather, the recitation is taken from the parties' filings, and the factual elements are either undisputed or alleged and assumed to be true for purposes of the jurisdictional analysis that follows.

3. Later, in August 2003, the Transportation Security Administration became a part of the Department of Homeland Security. *See* 49 C.F.R. § 1502.1 (2003).

4. NCS Pearson was awarded a contract in March 2002 by the Department of Transportation to help recruit, qualify, and hire the new federal workforce. Pls.' App. at 114–15. As part of its work, NCS Pearson reported that it held 89 job fairs in 56 cities and assessed over 430,000 prospective applicants. *Id.*

5. The offers of "conditional appointment[s]" made by the letters received by these plaintiffs specified a grade and rate of pay at which each potential screener would be hired. Compl. Ex. A–H. The conditional appointments that were offered were "contingent upon the successful completion of [their] security background investigation and about problems that may surface in it." *Id.*, Ex. B–H. *See also id.*, Ex. A ("This appointment is contingent upon the successful completion of your security background investigation, urinalysis drug test, and the successful completion of the required training.").

6. Approximately 60 persons previously employed by Globe were hired by TSA, but only eleven did not receive the pay listed in their conditional appointment letters. Pls.' App. at 70 (Aff. of Douglas Gibson); Hr'g Tr. 26–27. None of the evidence presently before the court explains this inconsistency.

Three of the plaintiffs, Messrs. Calvin, Hayden, and Lakso, were supervisory screeners at Globe. Mr. Calvin's conditional appointment letter offers him a position as a supervisor, but his actual appointment assigns him a position as a screener. Compl. ¶¶ 1, 3. The salary for a screener is more than $13,000 less than that of a supervisor. *Id.* ¶¶ 2, 3. Messrs. Hayden and Lakso were also allegedly promised positions as supervisors, but their conditional appointment letters only offered them positions as screeners, and they accepted those appointments. *Id.* ¶¶ 41–43, 48–50. The Assistant Administrator for Human Resources Management acknowledged that at least some supervisory screeners were told they would receive a supervisor's position in TSA, but "the majority of supervisory positions were filled by the time many of the contract screeners joined TSA." Pls.' App. at 32 ("Draft 'Contract Screener' Letter" from Assistant Adm'r for Human Res. Mgmt. to aggrieved employees).

Plaintiffs filed administrative complaints, which were unsuccessful. The plaintiffs then filed suit in this court, alleging that the government is liable to them under contract and promissory-estoppel theories. The government filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. A hearing was held on November 23, 2004. The government has also filed a notice of supplemental authority, and the plaintiffs filed a supplemental brief.

## ANALYSIS

### Standard for Decision

The consolidated plaintiffs bear the burden of establishing this court's subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Ware v. United States,* 57 Fed.Cl. 782, 784 (2003). When ruling on a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted, courts must assume that the facts alleged in the complaint are true and make all reasonable inferences in favor of the plaintiffs. *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). When the jurisdictional facts in the complaint are challenged, fact-finding is appropriate. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999).

■ For this court to have jurisdiction, the United States must waive its sovereign immunity, and the plaintiffs' claims must be within the scope of that waiver. *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). The Tucker Act constitutes such a waiver, but does not create any substantive right of recovery against the United States. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). To be viable, any invocation of jurisdiction under the Tucker Act must be accompanied by a substantive claim that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also Wolfchild v. United States,* 62 Fed.Cl. 521, 535, 544 (2004).

Plaintiffs make two principal arguments regarding their pay. First, they argue that the offer letters they signed were contracts that the government breached when it failed to pay them the listed salary. Second, they argue that they were third party beneficiaries to an agreement between TSA and Globe, in which the Globe screeners continued to work during the hiring process in exchange for an interim salary and "Patriot Pay" along with the promise of pay retention if they were appointed by TSA. Each of these claims will be examined in turn.[7]

### Offer Letters

Plaintiffs claim that their offers of conditional appointments are binding contracts, which the government subsequently breach-

---

7. Plaintiffs' complaint also asserts promissory-estoppel claims. Compl. ¶ 56. This court does not have jurisdiction to hear such claims, and therefore those claims are dismissed. *See Perpet-* *ual Fin. Corp. v. United States,* 61 Fed.Cl. 126, 138–39 (2004); *Knaub v. United States,* 22 Cl.Ct. 268, 276 (1991).

ed when it failed to pay the plaintiffs the salary listed on those offers. Compl. ¶¶ 4, 8, 13, 18, 23, 28, 33, 38; Pls.' Resp. at 10–13. The government avers that those letters were and are not binding. Def.'s Mot. at 7–8; Def.'s Reply at 1–2.

The Tucker Act grants this court jurisdiction over claims "against the United States founded ... upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Supreme Court has interpreted this provision to grant jurisdiction over disputes regarding the government's contracts for employment but not over disagreements about pay due appointed employees who challenge their appointment or promotion in reliance on an agreement or contract. *See Army and Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728, 735–38, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982) (appointed employee of AAFES may not bring suit under the Tucker Act relying on implicit-in-fact contract based on AAFES personnel regulations); *United States v. Hopkins*, 427 U.S. 123, 126–27, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) (Tucker Act jurisdiction may be premised on employment contract as well as one for goods and services, and case remanded for consideration of whether claimant was employed by contract or by appointment); *see also Boston v. United States*, 43 Fed.Cl. 220, 226 (1999) ("if plaintiff was employed by virtue of an appointment, rather than by virtue of an employment contract, this Court lacks jurisdiction under the Tucker Act"). While the Supreme Court has not explicitly held that employment by appointment and by contract are mutually exclusive, its reasoning implies such a principle, and courts have interpreted *Sheehan* and like precedents to require mutual exclusivity. *See, e.g., Collier v. United States*, 56 Fed.Cl. 354, 356–57 (2003).

■ The question of whether a government employee is serving by contract or appointment depends upon the "relevant statutory language and regulations and the language of the hiring documents." *See American Fed'n of Gov't Employees Local 1 v. Stone*, 342 F.Supp.2d 619, 625 (N.D.Tex. 2004) (citing *Hopkins*, 427 U.S. at 127–30, 96

S.Ct. 2508). In analyzing these circumstances, "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995) (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed.Cir.1985)). In other words, there is a "presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract." *Collier*, 56 Fed.Cl. at 357.

■ Here, the relevant statutory language does not rebut the presumption of appointment. Section 111(d) of the ATSA provides that, with regard to screener personnel:

Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may *employ, appoint*, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of *individuals* as the Under Secretary determines to be necessary *to carry out the screening functions* of the Under Secretary under section 44901 of title 49, United States Code. The Under Secretary shall establish levels of compensation and other benefits for individuals so employed.

Note following 49 U.S.C. § 44935 (emphasis added). The government disputes that this statute is applicable, citing instead to 49 U.S.C. § 323(a), which empowers the Secretary of Transportation to "appoint and fix the pay of officers and employees of the Department of Transportation" and to "prescribe their duties and powers." The government claims that while TSA was part of the Department of Transportation, its hiring powers must have been derived from 49 U.S.C. § 323(a). Def.'s Mot. at 9; Def.'s Reply at 3–4. This argument ignores the language of Section 111(d) of the ATSA, which is applicable "[n]otwithstanding any other provision of law." The Federal Circuit recently held that "[t]he language 'notwithstanding any other provision of law' signals that this screener-specific provision is to override more general, conflicting statutory provisions to the extent that they would apply to screeners." *Co-*

nyers v. Merit Sys. Prot. Bd., 388 F.3d 1380, 1382 (Fed.Cir.2004). Moreover, it is a fundamental principle of statutory construction that specific statutes govern over general statutes. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Section 111(b) of the ATSA therefore governs the employment of screener personnel.

The screener-specific provision does not explicitly permit hiring by contract. See Stone, 342 F.Supp.2d at 625. Plaintiffs argue that it authorizes the Under Secretary to *employ* screener personnel, and therefore "authorizes a government official to enter into a contractual agreement with an appointed employee." Pls.' Resp. at 13. The provision does permit TSA to employ or appoint its personnel. Given the principle of statutory construction that no word in a statute shall be superfluous, the word "employ" allows TSA the option of hiring by contract. See TRW, Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). Regardless, this option does not overcome the presumption of appointment, especially in light of the facts in this case.

The circumstances surrounding the hiring of the plaintiffs indicate that they were appointed and not contract employees.[8] The offers acknowledged by the signatures of each of the plaintiffs state, "I am pleased to offer you a *conditional appointment*" and that "[t]his appointment is contingent." See, e.g., Pls.' App. at 6 (Offer Letter of Sean Calvin). At least one of the plaintiffs recognized herself as an appointee in her grievance form. See id. at 21 (Payroll Problem Resolution Request for Irene Staber) (stating "I have a conditional appointment"). The screeners also executed "Appointment Affidavits," which call for the "signature of appointee." See, e.g., Def.'s App. at 1 (Appointment Aff. of Sean Calvin). In addition, plaintiffs each executed a United States Office of Personnel Management Standard Form 50 (SF 50), which has been considered one "of the usual indicia of civil service sta-

tus." Horner v. Acosta, 803 F.2d 687, 694 (Fed.Cir.1986) (holding that the absence of an SF 50 or other indicia of appointment supported the Merit Systems Protection Board's finding that certain contract employees were not appointed in the civil service); Pls.' App. at 35 (SF 50 of Irene Staber); Def.'s App. at 10–19 (Appointment Affs. for each of plaintiffs). Plaintiffs have provided no evidence that directly contradicts this characterization of plaintiffs as appointees.

Plaintiffs endeavor to rebut their status as appointees by showing that they have been told they have no civil service rights. Pls.' Supp. Br. at 2. Whether government employees have civil service protections, however, is a separate inquiry from whether they were appointed or hired by contract. See, e.g., Exec. Order No. 10,577, § 6.3, 19 Fed.Reg. 7,521 (Nov. 22, 1954), *reprinted as amended as a note to* 5 U.S.C. § 3301 ("The head of an agency may fill excepted positions by the *appointment* of persons without civil service eligibility or competitive status.") (emphasis added). Many government employees are appointed but have no civil service protection. Plaintiffs are among them.

In light of the evidence adduced by the parties, as well as the principle that "federal employees do not have contractual relationships with the government, barring an explicit agreement to the contrary executed by a federal officer who has authority to contract," Darden v. United States, 18 Cl.Ct. 855, 859 (1989), plaintiffs are appointees, and their claims of breach of employment contract are precluded.

*Third Party Beneficiaries*

■ In their most recent filing, plaintiffs have also alleged that they are third party beneficiaries to a contract between the government and Globe, under which Globe performed screening functions during the transition period, and its employees would wait to apply for TSA screener positions in exchange for "Patriot Pay" for the work done and a promise of pay retention for those employees

8. The question whether the screeners were appointed or employed under contract governs this court's jurisdiction as well as the merits. As the discussion that follows shows, the court has considered documentary evidence outside the pleadings in reaching its decision. In taking account of the documentary materials, the court has examined whether genuine disputes of material fact arise respecting jurisdictional issues.

who were hired by TSA. *See* Pls.' Supp. Br. at 1–2.

Plaintiffs offer several pieces of evidence to suggest that this agreement existed. The Federal Security Director of the TSA Office in Minnesota wrote that "[o]ur agency requested that they delay applying because we needed them to continue working to fill the gap. As a result, they missed the opportunity for higher paying positions." Pls.' App. at 8. In addition, TSA apparently issued a memorandum entitled TSA Airport Federalization Process—Assessment and Hiring Process, which it provided to plaintiffs. *See* Pls.' App. at 24–30. This memorandum describes how "TSA provided the current airport security contractors with special funds which they are authorized to provide to current screeners who stay until the end of the contract as RETENTION BONUSES. The purpose of this money is to keep workers on the job until the end of the contract, even if they find out early on that they don't qualify under the preliminary online or telephone assessment process." *Id.* at 29.

Even if such an agreement between Globe and TSA were in place, that would not provide this court with jurisdiction because the plaintiffs are appointees. A party's "relationship with the Government cannot be simultaneously governed by both an appointment and a contract." *Collier*, 56 Fed.Cl. at 356; *see also Pijanowski v. United States*, 60 Fed.Cl. 628, 632 (2004) ("appointment to a federal position is contrary to the establishment of a contractual relationship"). This mutual exclusivity means that the plaintiffs cannot be both appointees and beneficiaries of a contract with a third party. Recently, in a case where the plaintiffs claimed third-party-beneficiary rights, the Federal Circuit held that " '[o]ne is not entitled to the benefit of a position until he has been duly appointed to it.' " *Todd v. United States*, 386 F.3d 1091, 1095 (Fed.Cir.2004) (quoting *Testan*, 424 U.S. at 402, 96 S.Ct. 948). Plaintiffs' appointments, through their SF 50s, determined their salaries, regardless of the existence of any prior contract.

*Defendant's Request to Initiate Discovery*

The plaintiffs have requested discovery on "issues dealing with the Motion to Dismiss."

Pls.' Supp. Br. at 5; Hr'g Tr. 25, 29. Because the court must make findings of fact when jurisdictional facts in the complaint are challenged, plaintiffs contend that discovery would aid the court in making such determinations. Plaintiffs' counsel appears to be arguing that because matters outside the pleading have been presented to and not excluded by the court, consequently, under RCFC 12(b) this court should treat the motion to dismiss as a motion for summary judgment, and discovery should be permitted pursuant to RCFC 56(f). *See Tiger Natural Gas, Inc. v. United States*, 61 Fed.Cl. 287, 291 (2004). Even assuming that the principles of Rule 56(f) might well be deemed to apply to a motion to dismiss where jurisdictional facts are at issue, the standard for invoking the procedures of RCFC 56(f) has not been satisfied. *See Theisen Vending Co. v. United States*, 58 Fed.Cl. 194 (2003) (listing factors governing whether a motion for discovery should be granted under RCFC 56(f) prior to acting on a motion for summary judgment). The three areas of discovery cited by plaintiffs are the basis of the pay decisions made, how the plaintiffs were underpaid, and the relationship among TSA, Globe, and the plaintiffs. Pls.' Supp. Br. at 5. However, facts regarding these topics would not be material to the disposition of defendant's motion to dismiss. As discussed, the pivotal issue concerning the motion is whether plaintiffs are appointees or contract employees, and the evidence before the court shows that the plaintiffs are appointees. Plaintiffs' request for discovery is therefore denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED. TSA apparently made the screeners promises that it could not keep, but this court is without jurisdiction to compensate plaintiffs. Over twenty years ago, the Court of Claims held that "[f]ederal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not

the government." *Shaw v. United States,* 226 Ct.Cl. 240, 640 F.2d 1254, 1260 (1981). The plaintiffs should not have been treated so cavalierly, but as the court observed in *Shaw,* the plaintiffs' claims against the government are moral, not legal. *Id.* The clerk shall enter separate judgments dismissing each of these consolidated cases. No costs.

It is so ORDERED.