Mario **MENDOZA**, et al., Plaintiffs,

v.

**UNITED STATES**, Defendant.

No. 08–499C.

United States Court of Federal Claims.

June 12, 2009.

332

Edward P. Fahey, Jr., Laredo, TX, for plaintiffs.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the papers were Michael F. Hertz, Acting Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This case was transferred to this court by the United States District Court for the Southern District of Texas, Laredo Division. The seven plaintiffs worked at a warehouse in Laredo, Texas, which acquired and shipped supplies for the Mexican–United States Commission for the Eradication of Screwworms ("the Commission"). Third Am. Compl. ¶¶ 1–7, 30.[1] The Commission was established by the governments of Mexico and the United States to eradicate screwworms in Mexico and to prevent them from being reintroduced into the United States through Mexican cattle imports. *See id.* ¶ 24. The United States' participation in the program was managed by the Department of Agriculture. *See* Animal Disease Control Cooperation Act of 1947, Pub.L. No. 80–8, 61 Stat. 7 (previously codified at 21 U.S.C. § 114b), *repealed by* Farm Security and Rural Investment Act of 2002, Pub.L. No. 107–171, Title X, § 10418(a)(9), 116 Stat. 508. In 2005, the Department of Agriculture closed the warehouse in Laredo where plaintiffs worked, and plaintiffs' positions at the warehouse were eliminated. Third Am. Compl. ¶ 39. Plaintiffs claim that they were "federal employees" but were not treated as such during their work with the Commission and now "make a claim for the pay and benefits associated with federal employment." *Id.* ¶ 49. In the alternative, plaintiffs claim that they had an implied-in-fact contract with the Department of Agriculture and that the agency breached the contract by not providing plaintiffs with the pay and benefits attendant to their positions. *Id.* ¶¶ 52, 58. Currently pending before the court is plaintiffs' request that the case be remanded to the Office of Personnel Management ("OPM") for consideration of a portion of their claims, along with defendant's recital that it "does not oppose a remand of all claims within the [c]ourt's jurisdiction." Preliminary Joint Status Report at 2, Docket no. 27 (June 1, 2009). The court will treat plain-

---

1. The plaintiffs are Mario A. Mendoza, Jose M. Soto, Francisco Javier Vela, Jose Z. Rodriguez, Marta S. Martinez, Constancio Lara, Jr., and Irma S. Ochoa.

tiffs' request as a motion for remand and defendant's recital as a response to such a motion.

## FACTS[2]

The screwworm fly is a parasite whose larvae infest open wounds and feed on live flesh. Third Am. Compl. ¶ 21. Once a wound is infested by screwworms the potential exists for the parasite to kill its host. *Id.* ¶ 23. Screwworm infestations caused the livestock industry in portions of the United States to incur significant financial losses, mainly attributable to the high mortality rate of cattle infected with screwworms. *Id.* ¶¶ 23–24. As a result, the federal government undertook an ambitious control program in the 1960s, resulting in the eradication of the screwworm by 1966 in the United States. *See* Second Am. Compl., Ex. A (Screwworm Program Profile).

Despite having eradicated the screwworm in the United States, the federal government became concerned about the possible reintroduction of the parasite through cattle that were imported from Mexico. Third Am. Compl. ¶ 24. To limit the potential for the screwworm to be reintroduced into the United States, the federal government sought to assist Mexico in eliminating the parasite in that country. *Id.; see* Animal Disease Control Cooperation Act, codified before repeal at 21 U.S.C. § 114b (granting the Secretary of Agriculture the authority "to cooperate with the [g]overnment of Mexico ... to eradicate ... foot-and-mouth disease or rinderpest in Mexico where he deems such action necessary to protect the livestock and related industries of the United States"). Relying upon the authority provided by the Animal Disease Control Cooperation Act of 1947, in 1972 the Secretary of Agriculture entered into a cooperative agreement with the Mexican Secretary of Agriculture and Livestock. *See* Screwworm Eradication Program, U.S.-Mex., Aug. 28, 1972, 23 U.S.T. 2465. The agreement stated that its goal was "to establish a joint program in the Republic of Mexico to eradicate screwworms" from the border of Mexico and the United States to the Isthmus of Tehuantepec. *Id.* Subsequently the program was extended to cover all of Mexico. Second Am. Compl., Ex. A (Screwworm Program Profile).

The joint eradication program undertaken by Mexico and the United States has largely been successful in combating screwworm infestations. Third Am. Compl. ¶ 31. The program limited the screwworm population by releasing male flies that had been sterilized by radiation into the environment. *Id.* ¶ 29. After attempting to mate with a sterilized male fly, a female fly becomes incapable of successfully reproducing, thereby reducing the population of screwworms. *Id.* ¶ 29.

The warehouse in Laredo, Texas forwarded supplies and materials to the eradication efforts underway in Mexico. Third Am. Compl. ¶ 30. Plaintiffs began working at the warehouse on various dates between 1976 and 2001. *Id.* ¶¶ 32–38. In 2005, the Department of Agriculture decided to close the Laredo warehouse and it offered some of the plaintiffs the opportunity to work at a facility in Brownsville, Texas; however, they declined the Department of Agriculture's offer. *Id.* ¶ 39. Plaintiffs assert that they received a severance package but no retirement benefits. *Id.*

Plaintiffs initially filed their complaint in the United States District Court for the Southern District of Texas on July 18, 2006. The case was ordered transferred to this court on December 3, 2007, and the transferred case was eventually received by the clerk of this court and docketed on July 10, 2008. Plaintiffs filed their First Amended Complaint on July 28, 2008, pursuant to Rule 3.1(a)(4) of the Rules of the Court of Federal Claims ("RCFC"). Preliminary proceedings culminated in the filing by plaintiffs of a Third Amended Complaint on March 13, 2009, and the filing by the government of an answer on March 27, 2009.

## STANDARDS FOR DECISION

The Tucker Act provides that for "any case" that falls within this court's jurisdic-

---

2. The following recitation of facts is drawn from the complaint and exhibits previously submitted by the plaintiffs. These recitations do not constitute findings of fact by the court. Rather, the recited factual elements are either undisputed or uncontested, except where a disagreement is noted.

tion, "the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2); *see also* RCFC 52.2(a) (providing that "[i]n any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official"). As these provisions indicate, before the court can order a remand or otherwise act on the merits of a case, its jurisdiction over the matter in controversy must be established. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The plaintiffs bear the burden of establishing by a preponderance of the evidence that this court has subject matter jurisdiction over their claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *see also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

In ascertaining whether subject matter jurisdiction over a dispute exists, the court must accept as true all facts asserted in plaintiffs' complaint and "draw all reasonable inferences" in favor of the plaintiffs. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (stating, however, that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The factual allegations contained in plaintiffs' complaint must be plausible, *i.e.*, they "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (2007); *see also Ashcroft v. Iqbal*,

—— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that the standard articulated in *Twombly* "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"); *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed.Cir. 2009) (applying the plausibility standard).[3]

## ANALYSIS

### A. Subject Matter Jurisdiction

■■■■ The Tucker Act provides this court with "jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). The Tucker Act, alone, is insufficient to vest this court with jurisdiction. *See, e.g., United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed. Cir.2003) (en banc). Rather, the Act serves as a waiver of the United States' sovereign immunity for certain claims that " 'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damages sustained.' " *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *Testan*, 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) ("[A] fair inference will do."). For plaintiffs to properly invoke the jurisdiction of this court they "must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc in relevant part). The substantive source

---

3. Among other things, a pleading invoking the court's juridical power must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). For approximately half a century, courts examined the sufficiency of a plaintiff's pleading by inquiring whether "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In 2007, a majority of the Supreme Court explained that "this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563, 127 S.Ct. 1955. The Supreme Court in *Twombly* articulated the requirement that a plaintiff's complaint "state a claim to relief that is plausible on its face," *id.* at 570, 127 S.Ct. 1955, explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, —— U.S. at ——, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

identified by plaintiffs must be "reasonably amenable to the reading that it mandates a right of recovery in damages." *White Mountain*, 537 U.S. at 473, 123 S.Ct. 1126; *see also Greenlee County, Ariz. v. United States*, 487 F.3d 871, 877 (Fed.Cir.2007) (applying the "reasonably amenable" standard).

■ If plaintiffs are able to identify a substantive source of law that is capable of being interpreted to mandate compensation from the United States for the injury sustained and have made "a nonfrivolous assertion that [they are] within the class of plaintiffs entitled to recover under the money-mandating source, [then] the Court of Federal Claims has jurisdiction." *Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1307 (Fed.Cir.2008). Only after completing this initial jurisdictional inquiry will the court address the specific question of whether the facts in the plaintiffs' case fit within the terms of the statute. *See Greenlee County*, 487 F.3d at 876 (citing *Fisher*, 402 F.3d at 1172). If, at that point, this court concludes that plaintiffs' claim " 'does not fit within the scope' " of the grounds for relief under the money-mandating source, plaintiffs will lose " 'on the merits for failing to state a claim on which relief can be granted [based upon RCFC 12(b)(6)].' " *Id.* (quoting *Fisher*, 402 F.3d at 1175–76).

### 1. *Sufficiency of plaintiffs' allegations of employment.*

Plaintiffs assert that during their employment with the Commission, they were federal employees and the Commission and the Department of Agriculture failed to treat them as such. *See* Third Am. Compl. ¶¶ 44, 48. Plaintiffs seek to recover the benefits associated with federal employment that they claim were withheld from them due to their erroneous classification, identifying the Back Pay Act, 5 U.S.C. § 5596, as the substantive basis for their employment claims. Third Am. Compl. ¶ 10. Section 5596 applies to "[a]n employee of an agency who … is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action

which has resulted in the withdrawal or reduction of all or part of the pay, allowances or differentials of the employee." 5 U.S.C. § 5596(b)(1). It grants such an employee an entitlement to the pay, allowances, or differentials, along with attorney fees. 5 U.S.C. § 5596(b)(1)(A). Nonetheless, standing by itself, Section 5596 is not a money-mandating source that would support a claim under the Tucker Act. *See United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983) (en banc) (stating that the statute "is merely derivative in application"). Instead, the Federal Circuit has held that "[t]he Back Pay Act is such a money-mandating statute when based on violations of statutes or regulations covered by the Tucker Act." *Worthington v. United States*, 168 F.3d 24, 26 (Fed.Cir.1999); *see also Hamlet v. United States*, 63 F.3d 1097, 1103–07 (Fed.Cir.1995) *("Hamlet II"); Hamlet v. United States*, 873 F.2d 1414, 1416–17 (Fed.Cir.1989) *("Hamlet I").*

■ Here, plaintiffs claim they are entitled to recover the benefits associated with being a federal employee, which they did not receive while working for the Commission due to the federal government's failure to treat them as federal employees. Third Am. Compl. ¶¶ 48–49. This court's Tucker Act jurisdiction can encompass federal civilian pay claims because a statute that specifies the salary an individual is to receive in exchange for being a federal employee is a money-mandating provision. *See In re United States*, 463 F.3d 1328, 1333 (Fed.Cir.2006) ("A pay statute may serve as the basis for Tucker Act jurisdiction."). Section 5333 of Title Five of the United States Code provides that "[n]ew appointments shall be made at the minimum rate of the appropriate grade." 5 U.S.C. § 5333. This provision satisfies the money-mandating requirement "because once a condition is met, … the statute requires payment to employees with that position." *Doe v. United States*, 463 F.3d 1314, 1325 (Fed.Cir.2006) (citations omitted). Thus, if plaintiffs were federal employees, they were entitled to be paid in accordance with the pay rates set forth in the General Schedule. *See* 5 U.S.C. § 5332.[4] In short, plaintiffs have

---

**4.** The Supreme Court's decision in *Testan* does

not bar this court from exercising jurisdiction

identified additional sources of law that require the federal government to pay damages if they can prove that they were federal employees, but were not treated as such by the Department of Agriculture and the Commission.

To have a plausible claim, plaintiffs must produce factual support to support the conclusion that they were federal employees. For federal purposes, the term "employee" is defined to mean

an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

. . .

(D) an individual who is an employee under this section;

. . . ;

(2) engaged in the performance of a [f]ederal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a). Plaintiffs' complaint and exhibits set forth a plausible claim that their appointment and employment satisfy these criteria but they nevertheless were not treated as federal employees by the Department of the Agriculture and the Commission. Essential in this respect are plaintiffs' exhibits, which include documents detailing their appointment for employment with the Commission. Those exhibits provide the necessary "factual enhancement" to demonstrate that plaintiffs have crossed "the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955.

*2. Effect of the Civil Service Reform Act.*

In certain cases involving claims that arise from federal employment, the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 (codified, as amended, in scattered sections of Title 5 of the United States Code), effectively deprives this court of jurisdiction. *See United States v. Fausto*, 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Worthington*, 168 F.3d at 26 (stating that "*Fausto* deprives the Court of Federal Claims of jurisdiction over personnel actions covered by the CSRA"). Nonetheless, precedent indicates that the CSRA does not constitute a bar to the claims plaintiffs present in this action. The Federal Circuit has explained that "the CSRA, by its terms, . . . does not encompass every adverse personnel action against a federal employee." *Worthington*, 168 F.3d at 26. The CSRA covers personnel actions that are based "on unacceptable job performance, prohibited personnel practices such as 'unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers,' minor adverse personnel actions such as a suspension for 14 days or less, and major adverse personnel actions." *King v. United States*, 81 Fed.Cl. 766, 771 (2008) (quoting *Fausto*, 484 U.S. at 446, 108 S.Ct. 668) (internal citations omitted). Included within the last category are "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. §§ 7512(1)-(5). In the instant case, plaintiffs' complaint does not allege any adverse employment actions that fall within the terms of the CSRA and thus the statute does not serve as a bar to this court's exercise of jurisdiction over plaintiffs' claims.[5]

---

over plaintiffs' claim under the Back Pay Act. In *Testan*, the Supreme Court explained that "[t]here [was] no claim here that either respondent has been denied the benefit of the position to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not, appointed." 424 U.S. at 402, 96 S.Ct. 948. In the instant case, plaintiffs claim that they were federal employees but were not treated as such and thus were denied benefits which their positions entitled them to receive. Third Am. Compl. ¶¶ 48, 49.

5. Recently, a panel of the United States Court of Appeals for the District of Columbia Circuit expressed "doubts" about the correctness of the Federal Circuit's decision in *Worthington*. *Grosdidier v. Chairman, Broadcasting Bd. of Governors*, 560 F.3d 495, 497 (D.C.Cir.2009), *petition for cert. filed*, 77 U.S.L.W. 3646 (No. 08–1418) (May 14, 2009). The D.C. Circuit has repeatedly held that for federal employees challenging agency employment actions, the CSRA "is the exclusive avenue for suit even if the plaintiff cannot

*3. Alternative claims of an implied-in-fact contract.*

 Alternatively, plaintiffs claim that they had implied-in-fact contracts with the United States which entitled them to be treated as federal employees. Third Am. Compl. ¶ 19. To have a valid implied-in-fact contract with the United States "requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) 'actual authority' on the part of the government's representative to bind the government." *Hanlin v. United States,* 316 F.3d 1325, 1328 (Fed.Cir.2003). Express and implied-in-fact contracts both require proof of these elements, but "an implied-in-fact contract is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *La Van v. United States,* 382 F.3d 1340, 1346 (Fed.Cir.2004) (internal quotation marks and citations omitted).

 In their complaint, plaintiffs allege that they had applied for jobs with the Commission and were offered employment by the Department of Agriculture in various positions. Third Am. Compl. ¶ 42. Plaintiffs assert that they accepted the offers of employment to work at the Commission and proceeded to work at the Laredo, Texas facility until it was closed in 2005. *See id.* Additionally, in support of their claim of an implied-in-fact contract, plaintiffs attached as exhibits the contracts they had entered into with the Commission. *See, e.g.,* Second Am. Compl., Ex. C (Contract for Emergency Employee, Mario Alberto Mendoza (Sept. 17, 1979)) & Ex. G (Contract for Emergency

Employee, Jose M. Soto (Feb. 9, 1976)). Plaintiffs also included with their complaint an affidavit from Walter Rice, who from 1998 to 2000 served as Administrative Director of the Department of Agriculture's Screwworm Eradication Program in Mexico, reciting that the seven plaintiffs were employed by the Commission and were paid by the federal government. *Id.* Ex. P (Decl. Of Walter B. Rice (Oct. 28, 2008)). These factual allegations contained in the complaint and the attendant exhibits establish that this court has jurisdiction over plaintiffs' implied-in-fact contract claim.[6]

*4. Synopsis.*

In summation, the court has jurisdiction over both plaintiffs' claims under the Back Pay Act and their claims of implied-in-fact contracts. Plaintiffs in their complaint and the accompanying exhibits provide sufficient evidentiary proof to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

### B. Appropriateness of a Remand

In the instant matter, neither party challenges the appropriateness of a remand to OPM. In this respect, OPM may provide an appropriate forum to address plaintiffs' claims that they were federal employees as defined in 5 U.S.C. § 2105. OPM is empowered to decide whether retirement benefits are due, along with "all matters directly or indirectly concerned with [such an] adjustment[ ]." 5 C.F.R. § 831.101(a); *see also* 5 C.F.R. § 550.801. If OPM decides that plaintiffs were federal employees, it may also decide what, if any, benefits they are entitled to receive.[7]

---

prevail in a claim under the CSRA." *Grosdidier,* 560 F.3d at 497.

**6.** Notably, "if [plaintiffs'] employment was by 'appointment,' a breach of contract action against the government would be precluded." *Hamlet I,* 873 F.2d at 1417 n. 5 (citing *United States v. Hopkins,* 427 U.S. 123, 128, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) (Tucker Act jurisdiction may be premised on employment contract as well as one for goods and services, and case remanded for consideration of whether claimant was employed by contract or appointment)); *see also Hamlet II,* 63 F.3d at 1101–02 (addressing the contractual claim on the merits);

*Calvin v. United States,* 63 Fed.Cl. 468, 472 (2005) (explaining the basis for the presumption that federal employees hold their positions by appointment rather than by contract).

**7.** The regulations implementing the Back Pay Act provide that the statute does not cover "[m]onetary benefits payable to separated or retired employees based upon a separation from service, such as retirement benefits, severance payments, and lump-sum payments for annual leave." 5 C.F.R. § 550.803. However, 5 U.S.C. § 8336 is a money-mandating provision that addresses "[i]mmediate retirement." *Id.*

In accord with RCFC 52.2(b)(1)(B), OPM will have until December 14, 2009 to render its decision, which is six months from the date of this opinion and order. During the pendency of the case before OPM, proceedings in this court will be stayed.[8] Additionally, in accordance with RCFC 52.2(b)(1)(D), the court requests that defendant file a status report every 90 days to inform the court of the progress of the remand proceedings.

## CONCLUSION

For the reasons stated, plaintiffs' request to remand the case to OPM is GRANTED. OPM shall consider whether the plaintiffs should have been classified as federal employees and what, if any, benefits they are entitled to receive. The case shall be remanded to OPM for six months, and during that time proceedings in this court shall be stayed. Defendant shall file a status report within 90 days after the issuance of this opinion and order, and within each succeeding 90–day period thereafter.

It is so ORDERED.

---

**8.** The court makes no provision for its subsequent review of any decision OPM may render because a ruling by OPM can be appealed to the Merit System Protection Board and then to the Federal Circuit. *See* 5 U.S.C. §§ 7701, 7703, 28 U.S.C. § 1295(a)(9); 5 C.F.R. § 1201.3.